THOMAS SAUCIER *vs.* THE MAINE SUPPLY AND GARAGE Co., et al.

Androscoggin.   Opinion September 24, 1912.

*Bill in Equity.   Contractor.   Contract.   Estoppel.   Labor.   Lien.   Materials.*
*Priority.   Waiver.*

1.  A mechanic's lien for labor and materials furnished under a contract
takes precedence over a mortgage given subsequently to the making of a
contract, though the labor and materials, or some of them, may not be
actually furnished until after the mortgage is given.

2.  The testimony of the officers and trustees of the defendant bank affords
good grounds for the conclusion that the bank officers understood, when
they took the mortgage and parted with the bank's money, that the plain-
tiff was then constructing under a contract the building on which a lien
is claimed.   That being so, there is no basis for the bank's claim of
estoppel.   Whether the contract existed at the time of the original
negotiations for a loan or not, and, if it did, whether the plaintiff disclosed
it or not, are alike immaterial.

3.  The evidence does not sustain the bank's claim that the plaintiff has
waived his lien.

On appeal from decree below.   Appeal denied.   Decree below
affirmed with additional costs.

1.   This is a bill in equity, brought to enforce a mechanic's lien
under the provisions of Revised Statutes, Chapter 93, Section 29.
The plaintiff was the contractor and furnished labor and materials
in erecting the building under a contract with the Maine Supply and
Garage Company, dated October 20, 1910.   The Androscoggin
County Savings Bank, on January 4, 1911, took from the Maine
Supply and Garage Company a mortgage of the building and the
land on which it stood to secure a loan of $15,000.

2.   The plaintiff has a valid lien, for the amount of $4,543.15
due him, upon the property owned by the Maine Supply and Garage
Co.

3.  That said lien is entitled to priority in payment over the right of said Androscoggin County Savings Bank under the mortgage given it by said Maine Supply and Garage Company.

*J. G. Chabot,* for plaintiff.

*White and Carter,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, HALEY, JJ.

SAVAGE, J.    This bill in equity was brought to enforce a mechanic's lien under the provisions of R. S., ch. 93, sect. 29, et sequitur. The plaintiff, a contractor, furnished labor and materials in erecting a building under a contract with the Maine Supply and Garage Company, made and dated October 20, 1910.    The Androscoggin County Savings Bank, on January 4, 1911, took from the Supply and Garage Company a mortgage of the building and the land on which it stood, to secure a loan of $15,000.    The money was loaned for the purpose of paying for construction work and materials in and upon the building.    The entire amount of the loan was not advanced at the date of the mortgage.    Some of it was advanced then, and more was advanced later from time to time upon the architect's certificates, showing the progress of construction.    The case comes before us as on the appeal of the defendant bank from a decree by a single justice.    The decree established the plaintiff's lien for $4,354.31, and adjudged that it was entitled to priority in payment over the mortgage right of the bank.

Under principles well settled in this State and elsewhere, a mechanic's lien for labor and materials furnished under a contract takes precedence over a mortgage given subsequently to the making of the contract, though the labor and materials, or some of them, may not be actually furnished until after the mortgage is given. *Morse* v. *Dole,* 73 Maine, 351; *Farnham* v. *Richardson,* 91 Maine, 559; *Central Trust Co.* v. *Bodwell Water Power Co.,* 181 Fed. Rep., 735; 27 Cyc., 234.    This doctrine, if nothing else appeared, would sustain the decree.

But the defendant bank contends that under the circumstances of this case, the decree is erroneous upon two grounds, namely, that as against the bank the plaintiff is equitably estopped from claiming a lien, and, that he has waived the right to a lien.

In support of the first contention, the bank claims that when the treasurer of the Garage Company came to the defendant bank's banking rooms to apply for the loan he was accompanied by the plaintiff who produced a plan of the proposed building, discussed somewhat the details of construction, and made an estimate of the cost, and that the treasurer, in the presence of the plaintiff, explained to the officers of the bank that the difference between the amount of the loan and the estimated cost, about $9,000, was expected to be obtained from the stockholders. But it is claimed that the plaintiff did not disclose that he already had a contract for the erection of the building. And it is further claimed that from what was said by the plaintiff, or in his presence, and from what was not said, the officers of the bank understood, and had good reason to understand, that the plaintiff did not then have a contract, the liens under which would take precedence over the proposed mortgage, but that the making of such a contract was contingent upon obtaining the loan. Hence, it is argued, it is contrary to equity and good conscience for the plaintiff to assert a lien under his contract as against the mortgage, and he is equitably estopped to claim it.

Whether, if this were all there was to the case, the doctrine of equitable estoppel would apply, we do not need to inquire. There are other facts. And we think there are several answers to the bank's contention, upon the facts, gathered from the testimony of the officers of the bank themselves.

In the first place, inasmuch as the bank officers, or some of them, testified that the application for the loan was made, some said, "the fore part of October," and some "about the middle of October," and the contract for the building was not made until October 20, it was open to the Justice who heard the case, whose findings of fact are conclusive, unless clearly wrong, *Young* v. *Witham,* 75 Maine, 536; *Proctor* v. *Rand,* 94 Maine, 313, to find that no contract existed at the time of the application for the loan, and therefore the plaintiff had none to disclose. But passing this point, as perhaps of minor importance, we come to another.

In any event, the loan was applied for in October. It was not voted by the bank trustees until November 7. It was then found by the bank that the title to the land was not in the Supply and Garage Company, being, in fact, held by several individuals for the cor-

poration. The title was made good in the corporation, December 31. The mortgage was given and the loan made (in part) on the following January 4. In the meantime, the building was in process of construction by the plaintiff, and the work had reached the third story when the mortgage was given. The evidence clearly shows that the bank officers knew that the plaintiff was the contractor, and not the borrower, though, naturally, the money borowed would come to him. They expected that he would build the building. The treasurer of the bank testifies that he assumed that building operations would commence shortly after the loan was voted (November 7) and that the plaintiff was to be the contractor. The president of the bank testifies that the plaintiff "told me what he was doing when he first asked for the loan;" that he understood there was to be a contract for the building; that the plaintiff told him he had a contract for it, "a good contract;" that he himself saw the building in the process of construction, and all this, before the mortgage was taken and loan made. The testimony of these officers, with that of other trustees of like tenor, which it is unnecessary now to particularize, affords abundant grounds for a conclusion that the bank officers understood when they loaned the money and took the mortgage, that the plaintiff was then constructing the building under a contract. If so, there is, in that respect, no basis for the claim of estoppel. Whether the contract existed at the time of the original negotiations or not, and if it did, whether the plaintiff disclosed it or not, are alike immaterial. The bank seems to have parted with its money upon a correct understanding of the essential facts as they existed at that time.

Intimately connected with the claim of estoppel, perhaps so intimately as not to make it easily distinguishable, is the claim of a waiver of lien. This is based upon the contention that at the time the loan was applied for the plaintiff in effect agreed that, with the aid of the $15,000 loan, the building could and should be completed free of mechanic's liens, so that the mortgage should be an underlying security; or if the words and conduct of the plaintiff did not constitute an agreement, the plaintiff did so represent and hold out to the bank that the building would be so completed that he ought now to be bound by its statements, and be held to have waived any lien. We do not think that the evidence sustains the claim.

The evidence is plenary that both the plaintiff and the bank expected that the funds necessary to complete the building, in excess of the loan, would be provided by the stockholders. And in that sense it was understood that the bank's mortgage would be a first lien. There is an intimation in the record that the stockholders did provide means of some character and to some extent, but that they were diverted, without the knowledge or fault of either the plaintiff or the bank. However this may be, the evidence falls far short of showing any agreement by the plaintiff to complete the building free of liens as against the bank, or any representations, beyond estimates and expectations, that it would be so completed. In these expectations, the bank officers seem to have shared. They apparently had the same information and grounds for expectation that the plaintiff had. But the expectation failed. And it cannot fairly be gathered from the evidence either that the plaintiff intended to waive his lien, or that the bank officers had any reason then to think that he intended, in case the expectations failed, to bear himself any loss which might be occasioned by the failure. In fact, the evidence leads us to conclude that none of the parties contemplated that there might be such a failure, and that while the bank officers understood that there would be no liens as against their mortgage, they relied for that understanding, not on any waiver of lien by the plaintiff, but on the expectation and belief that the owner of the building had made, or would make, sufficient provision for the funds necessary in excess of the mortgage loan.

We are of opinion, therefore, that the decree below should be affirmed.

*Appeal denied. Decree below*
*affirmed, with additional costs.*