**CHICAGO TITLE INSURANCE COMPANY et al., Plaintiffs, Appellees,**

v.

**SHERRED VILLAGE ASSOCIATES et al., Defendants, Appellees,**

**Hercoform Incorporated, Defendant, Appellant.**

**No. 77–1157.**

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1977.

Decided Jan. 5, 1978.

---

Saco, Maine, was on brief, for defendants, appellants.

John W. Philbrick, Portland, Maine, with whom Verrill & Dana, Portland, Maine, was on brief, for plaintiffs, appellees Chicago Title Ins. Co. and New England Merchants Nat. Bank.

Thomas G. Wilson, Atty., App. Section, Civ. Div., Dept. of Justice, Washington D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Peter Mills, III, U. S. Atty., Portland, Maine, and Ronald R. Glancz, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for plaintiff, appellee Secretary of Housing and Urban Development.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, WOLLENBERG, District Judge.*

COFFIN, Chief Judge.

Hercoform Incorporated, subcontractor on a housing project in Maine, appeals from a decision that the federal government's mortgage lien has priority over Hercoform's mechanic's lien to proceeds from a forthcoming foreclosure. Hercoform contracted to provide and erect prefabricated housing units for the moderate income residential housing project in 1971. In 1972, the developer obtained mortgage financing for the project from the New England Merchants National Bank, whose loan was insured by the Department of Housing and Urban Development pursuant to its authority under Section 236 of the National Housing Act (12 U.S.C. § 1715z–1(j) ). A regulatory agreement between HUD and the developer was recorded along with the mortgage on the day the latter was executed. Chicago Title Insurance Company insured the developer's title in the mortgaged property for the benefit of the Bank.

Hercoform did not record notice of its lien until after its work on the project was completed in 1973. Under the applicable state law there was no need for Hercoform to record the notice before then. On the

Charles W. Smith, Saco, Maine, with whom Smith, Elliott, Wood & Nelson, P. A.,

* Of the Northern District of California, sitting by designation.

same day the lien was recorded Hercoform brought suit in state court to enforce its claim.

When the developer defaulted on his payments in 1974, the Bank, pursuant to its rights under the insurance agreement, assigned its mortgage to HUD. In the assignment the Bank warranted to HUD that the mortgage would have priority over all liens recorded after the date on which the mortgage had been filed. Chicago Title insured the Bank's obligations under the warranty.

Under state law Hercoform's lien has priority over the mortgage, since Hercoform's contract was executed before the mortgage was.[1] Seeking to avert the entry of a judgment to that effect in Hercoform's pending state court suit, the Bank and Chicago Title brought suit under the Declaratory Judgment Act (28 U.S.C. § 2201) in the United States District Court for the District of Maine. The relief sought was a declaration that the government's mortgage lien was entitled to priority over Hercoform's mechanic's lien. Hercoform and HUD were named as defendants.

Hercoform moved to dismiss the federal suit on the ground that the plaintiffs lacked standing. The plaintiffs lost their standing, according to Hercoform, when the Bank assigned its mortgage to HUD. The district court, however, denied the motion and, after reviewing the merits, granted the relief which the plaintiffs were seeking.

On appeal Hercoform contends, as it did before the district court, that plaintiffs do not meet the "prudential" rule of standing which requires that the legal rights or interests for which protection is sought be those of the party asserting them, not of a third person. See *Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As a result, though, of the warranty given by the Bank in its assignment to HUD and guaranteed by Chicago Title, plaintiffs do have a legal interest in the outcome of this suit. If Hercoform's lien were held to have priority over HUD's, plaintiff would be liable for breach of warranty and would thereby be legally responsible for any financial loss which HUD might suffer as a result. Consequently, we agree with the district court that plaintiffs did have standing to raise the lien priority issue.

We now turn to the substantive issue. When, as here, there is no governing legislation, federal courts have traditionally applied the federal common law principle that "the first in time is the first in right" to priority disputes involving federal liens.[2] This principle was first enunciated by the Supreme Court in *Rankin v. Scott,* 25 U.S. (12 Wheat.) 177, 6 L.Ed. 592 (1827), a case involving a priority dispute between two state-created judgment liens. In resolving the dispute, the Court stated:

> "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds . . . ." *Id.* at 179, 6 L.Ed. 592.

The Supreme Court has since applied the "first in time" rule in a series of cases during the 1950's and early 1960's involving priority disputes between federal tax liens and various kinds of nonfederal liens.[3] With regard to the nonfederal liens, the Court established a federal common law rule to determine when they arose rather than using the dates the liens arose under

---

1. 10 M.R.S.A. § 3251; *Saucier v. Maine Supply & Garage Co.,* 109 Me. 342, 84 A. 461 (1912).

2. See, *e. g., Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963), *United States v. New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954), *United States v. Ringwood Iron Mines, Inc.,* 251 F.2d 145, 146–147 (3rd Cir.) *cert. denied* 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148 (1958), *United States v. Latrobe Construction Company,* 246 F.2d 357, 365 (8th Cir., 1957).

3. See, *e. g., United States v. Vermont,* 377 U.S. 351, 358, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *United States v. Pioneer American Insurance Company,* 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. Acri,* 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264 (1955); *New Britain, supra,* 347 U.S. at 85, 74 S.Ct. 367.

state law. The Court stated that the determination of when a nonfederal lien "acquired sufficient substance and has become so perfected as to defeat a later-arising . . . federal tax lien" should be governed by federal law. " 'Otherwise, a state court could affect the standing of federal liens, contrary to the established doctrine [that the effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question].' " *United States v. Pioneer American Insurance Company,* 374 U.S. 84, 88–89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1965), quoting *United States v. New Britain,* 347 U.S. 81, 86, 74 S.Ct. 367 (1954); *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

The federal rule adopted by the Court for determining when a nonfederal lien arose for "first in time" purposes was the choateness doctrine; i. e. that a lien's priority was measured from the time it became choate. A lien became choate when the identity of the lienor, the property subject to the lien, and the amount of the lien were all established. *New Britain, supra,* 347 U.S. at 84, 74 S.Ct. 367. Normally, the amount of a lien is not fixed until the debtor has exhausted his opportunities to challenge the amount. Thus, to render his lien choate, the lienor must usually reduce his claim to a judgment. See, *e. g., United States v. White Bear Brewing Company,* 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956), *United States v. Vermont,* 377 U.S. 351, 358–59, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). Using the date a lien became choate as the date it arose for "first in time" purposes virtually guaranteed the federal tax lien's priority in order-of-priority disputes, especially those involving mechanics' lienors, who rarely reduced their claims to judgment until after they had completed their work on a project. See, *e. g., White Bear*

*Brewing Company, supra,* 350 U.S. at 1010, 76 S.Ct. 646, (dissenting opinion); *see Kimbell Foods, Inc. v. Republic National Bank of Dallas,* 557 F.2d 491, 499 (5th Cir. 1977); W. Plumb, *Federal Liens and Priorities— Agenda For The Next Decade,* 77 Yale L.J. 228, 229–30 (1967).

Following the Supreme Court's application of the "first in time" and "choateness" doctrines in federal tax lien cases, several lower federal courts extended the application of these doctrines to disputes involving non-tax federal liens.[4] In 1966, however, partly in response to the Supreme Court's use of the choateness doctrine, Congress amended the lien provisions of the Internal Revenue Code. One of the primary purposes of the Federal Tax Lien Act of 1966 was to up-date the tax lien laws to be consistent with commercial practice as it had evolved in the states, which through the enactment of mechanics' lien laws had generally given high priority for reimbursement to those whose services enhanced the value of the property upon which they worked. *S.Rep. No.* 1708, 89th Cong., 2nd Sess. (1966), 3 U.S.Code Cong. & Admin. News pp. 3722–25 (1966); *Reports of the Special Committee on Federal Liens,* 83 A.B.A. Rpts. 453–54, 457 (1958) (hereafter, *Special Committee* ). Under the amended provisions, a mechanic's lien had priority over a federal tax lien if, prior to the recordation of the tax lien, the mechanic's lien had become valid under state law against subsequent purchasers without actual notice and the lienor had commenced work on the project. 26 U.S.C. §§ 6323(a) and (h)2.

Since the enactment of the 1966 Tax Act, the Circuits have split on the issue of whether the doctrine of choateness should continue to be applied in priority disputes involving non-tax federal liens. The Second, Fourth and Tenth Circuits have continued to apply choateness, primarily on the grounds that: (1) the Tax Act on its

---

**4.** See, *e. g., United States v. Oswald & Hess Co.,* 345 F.2d 886 (3rd Cir., 1965) (Small Business Administration Mortgage Lien); *United States v. County of Iowa,* 295 F.2d 257 (7th Cir., 1961) (Reconstruction Finance Corporation mortgage lien); *United States v. Roessling,*

280 F.2d 933 (5th Cir., 1960) (mortgage lien under Emergency Relief Appropriation Act of 1935); *Southwest Engine Co. v. United States,* 275 F.2d 106 (10th Cir., 1960) (Small Business Administration chattel mortgage lien).

face and in its legislative history is limited in scope to federal tax liens, (2) Congress was aware of lower federal court decisions extending choateness to cases involving non-tax federal liens and, therefore, would have acted in these other areas too if it had intended that choateness no longer be applied there, (3) the Tax Act of 1966 is merely the latest in a series of Acts "designed to effect precisely limited expansions of categories of secured creditors protected from secret federal tax liens", and (4) Congress, because of its fact-gathering facilities, is better equipped than the judiciary to gauge the impact of a decision to waive the priority to which federal non-tax liens are generally entitled now. *United States v. General Douglas MacArthur Sr. Vil. Inc.,* 470 F.2d 675, 679 (2nd Cir., 1972); *T. H. Rodgers Lumber Company v. Apel,* 468 F.2d 14, 17–20 (10th Cir., 1973); *H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank,* 388 F.2d 156, 160 (4th Cir., 1967), *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968).

The Fifth and Ninth Circuits contend, however, that although the application of choateness may have been justifiable in the field of tax, where the government is an involuntary creditor, its application is not justifiable where the federal government voluntarily extends credit. In the commercial loan area, the government is able to take steps before disbursing funds to protect its investment. Second, since the reliance on choateness has been substantially diminished [5] in the area of tax collection—a governmental function necessary to the very existence of our government and its programs, and also the area in which the doctrine originated—it would be anomalous to continue applying it in areas less central

to the preservation of the government. *Kimbell Foods, Inc., supra* 557 F.2d at 500–03; *Ault v. Harris,* 317 F.Supp. 373, 374–76 (D.Alaska, 1968), *aff'd sub nom., Ault v. United States,* 432 F.2d 441 (9th Cir. 1970) (per curiam order).

Technically, there being no legislation or Supreme Court opinions governing the non-tax federal lien-mechanics' lien dispute before us, and no circuit precedent, we are free to fashion our own rule. We are sorely tempted to do so. Choateness has proven a fatal handicap in the race between a mechanic's lienor and a federal lienor. It appears to serve no strong policy, since the federal lienor stands to be enriched by the increase in the property value caused by the work of the mechanic's lienor, while the latter stands without remedy. Moreover, this built-in advantage is not necessary to protect the federal investment; the government in mortgage lending and insuring may choose its debtors and set its terms.

What makes us resist the temptation to announce our own rule is our skepticism that, in this arena of complex relationships intimately affected by both federal and local law, we would make any valuable contribution by adding a further complication. Where the circuits stand, before our decision, at five for choateness and two against, we think that changing the count to six and two may increase the chances of attracting the interest of Congress, if there is sustained demand for reform. While the doctrine was given birth by the Supreme Court, Congress has taken its first bite at reform in the Tax Act of 1966. We cannot avoid feeling that there is much that we do not know about the equities, effects of various rules, and relative ability of the federal and local lienors to protect themselves.[6]

---

**5.** The lien provisions of the Internal Revenue Code still do not contain priority rules which govern the tax lien's priority with respect to every single kind of nonfederal lien. See 26 U.S.C. § 6323. Therefore, the Supreme Court cases applying the choateness doctrine to federal tax lien—nonfederal lien priority disputes would still seem to be good law in those disputes not governed by the Code.

**6.** For example, it would seem that decisions such as (1) whether priority of federal liens should be subject to the impermanent policy decisions of state legislatures and (2) to what extent participation by private financial institutions, a primary goal of the National Housing Act, is dependent upon a rule favoring federal liens could be more equitably and intelligently made after Congressional hearings, rather than after a trial between a limited number of litigants.

What dissuades us in particular from joining the Fifth and Ninth Circuits is that we would not merely be siding with one camp, making the split in the circuits a bit more even. We would, having decided not to rely on the traditional requirement of choateness in determining the cognizable timing of a mechanic's lien, have to adopt a substitute formula. We would have difficulty in following the Fifth Circuit in *Kimbell Foods, supra,* which applied local law, the Uniform Commercial Code, to a privately held secured interest. This device fitted the case admirably, since the U.C.C. is of general, nationwide application, with no quixotic parochial variations. Recourse to the local law governing mechanics' liens, however, would incorporate many local eccentricities.[7] This fact led the Ninth Circuit in *Ault, supra,* to adopt the rule of the Tax Act, *i. e.,* adopting local law except where the mechanic's lienor has not commenced work prior to the recordation of the federal lien. Application of this rule, though, would not only require HUD to concern itself with the varying state laws, but would require contractors to be aware of the possible applicability of two sets of rules.

Were we to carve out our own approach which differed from the court in *Ault,* we would have succeeded only in further complicating a minefield which badly needs some Congressional sapping. In sum, we cannot fault the district court for having chosen the majority rule.

Accordingly, we affirm the district court's decision against the mechanic's lienor because the lien did not become choate before the federal lien arose.[8]

*Affirmed.*

7. Depending upon the state involved, a subcontractor's lien may arise when he commences work on the project, when the general contractor commences work, when the subcontractor executes his contract, or the lienor may even be entitled to a superpriority, giving him higher priority than a mortgage lienor regardless of whether the mortgage was recorded before the contractor's work was commenced or his contract executed. W. Plumb, *Federal Liens and Priorities—Agenda For The Next Decade II,* 77 Yale L.J. 605, 677 (1968); *Special Committee, supra,* 83 A.B.A. Rpts. at 457, 494.

8. Hercoform's, reliance on the "circular lien theory" is without merit because there are only two liens involved in this case. *Compare H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank,* 388 F.2d 156 (4th Cir. 1967).