**FEDERAL LAND BANK OF WICHITA,**
**Plaintiff–Appellant,**

v.

**Glenn Z. FERGUSON; Marjorie J. Ferguson; Mike Ahlberg; Earl E. Jones; Alice E. Jones, Defendants,**

**Ninth District Production Credit Association, formerly known as Southwest Production Credit Association, Defendant–Cross–Appellant,**

**United States of America, Department of Agriculture, by its agency Farmers Home Administration, Defendant–Appellee Cross–Appellee.**

**Nos. 88–2542, 88–2603.**

United States Court of Appeals,
Tenth Circuit.

Feb. 20, 1990.

Margaret L. Carey of Woodrow, Roushar & Carey, Montrose, Colo., for plaintiff-appellant.

John J. Fleming, Jr., Montrose, Colo., for defendant-cross-appellant.

Michael J. Norton, U.S. Atty., Jessie A. Messenger, Sp. Asst. U.S. Atty., and Jerry R. Atencio, Asst. U.S. Atty., Denver, Colo., for defendant-appellee-cross-appellee.

Before McKAY, TACHA and EBEL, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

This is a consolidated appeal from a judgment of the district court establishing the priority of two deed of trust liens held by defendant-appellee United States ex rel. Farmers Home Administration (FmHA) with respect to property owned by defendants Glenn and Marjorie Ferguson, who have not sought review of the district court's foreclosure order and have played no role in this appeal. Plaintiff-appellant Federal Land Bank (FLB) and defendant-cross-appellant Ninth District Production Credit Association (PCA) jointly challenge the district court's determination that FLB's claim for foreclosure-related attorney's fees, to which a portion of PCA's lien interest is junior, is itself subordinate to the FmHA liens.

The parties' dispute is driven by a conflict between the priority schemes mandated by state and federal law. Specifically, as explained in more detail below, this case requires an election between two source-of-law dependent outcomes: Under Colorado

law, FLB's claim for fees would assume the priority of the (senior) lien with which it is associated, thereby taking precedence over FmHA's junior lien, while under federal first-in-time and choateness principles, FmHA's lien would take priority over FLB's fees claim because the latter state law claim was inchoate at the time the federal lien was established.

Sometime after FLB's foreclosure action was removed to federal court, the parties submitted their priority dispute to the district court on a set of stipulated facts, from which we have culled the following pertinent details. In March of 1972, the Fergusons executed and delivered to FLB a promissory note secured by a contemporaneously recorded mortgage on the real property that is the subject of this action. Over the next several years, PCA and FmHA obtained from the Fergusons and recorded a number of deeds of trust on the same property. In accordance with the terms of a partial subordination agreement executed by these subsequent creditors in December of 1985, FmHA was left in a superior position as to all but a fraction of the debt secured by one deed of trust held by PCA.

There is no dispute regarding the ordering of the parties' liens, which follows in a straightforward manner from the stipulated facts. The controversy concerns the place in that order to be accorded FLB's claim for attorney's fees, which is based on the following provision included in its admittedly senior, recorded mortgage:

Mortgagor hereby covenants and agrees with mortgagee as follows: to reimburse mortgagee for all costs and expenses incurred by it in any suit to foreclose this mortgage, or in any suit in which mortgagee may be obliged to defend or protect its right or lien acquired hereunder, including all reasonable court costs, a reasonable attorney's fee where allowed by law, and other expenses; and such sum shall be secured hereby and included in any decree of foreclosure.

In Colorado, when a lien is enforced through mortgage foreclosure proceedings, the foreclosing creditor may obtain attorney's fees up to the ten percent limit imposed by Colo.Rev.Stat. § 38–38–106. *Bakers Park Mining & Milling Co. v. District Court*, 662 P.2d 483, 485 (Colo.1983). Furthermore, under Colo.Rev.Stat. §§ 38–37–142(2) (specifying rules governing written foreclosure sale bids), attorney's fees "allowable by the note or deed of trust" may be included in the foreclosing creditor's bid, *i.e.*, they may be treated as part and parcel of the indebtedness secured by the creditor's lien that must be satisfied before additional proceeds, if any, from the sale are distributed to junior lienholders or the debtor. *See, e.g., San Miguel Basin State Bank v. Oliver*, 748 P.2d 1342, 1344–46 (Colo.App.1987) (where foreclosing senior lienholder's bid exceeded aggregate amount of debt and recoverable attorney's fees, only the excess was to be applied to satisfy junior liens); *see also Thimmig v. Segel*, 89 Colo. 385, 3 P.2d 303, 304 (1931) (affirming trial court's holding that, while after-advances on notes secured by earlier mortgage did not relate back for purposes of lien priority, creditor was entitled to senior position to extent of original indebtedness, interest, *and attorney's fees* provided for in mortgage). Accordingly, we recognize that viewed exclusively in terms of the applicable state law, FLB's claim for recoverable attorney's fees would be accorded the same senior priority to which its associated mortgage is clearly entitled.

FmHA maintains, however, that this state priority scheme is partially overturned by federal first-in-time and choateness principles, which require placement of the lien held by FmHA ahead of FLB's fee claim (and, consequently, also ahead of even that portion of PCA's junior (to FLB) lien not already subordinated to FmHA by their December, 1985, agreement). In support of its position, FmHA relies upon this court's holding in *T.H. Rogers Lumber Co. v. Apel*, 468 F.2d 14, 16–18 (10th Cir.1972), that these federal principles, which were developed in a series of Supreme Court cases dealing with federal tax liens, also govern the prioritization of nontax, consensual federal liens (in *T.H. Rogers*, a mortgage held by FmHA). *See also D.I.R. v. United States*, 392 F.2d 307, 312–13 (10th

Cir.1968). Since FLB's fee claim was necessarily indeterminate as to amount—and therefore inchoate—at the time the FmHA lien attached, FmHA contends its lien is prior in time and prior in right to FLB's nonfederal claim for fees. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 721, 99 S.Ct. 1448, 1454–55, 59 L.Ed.2d 711 (1979) (for nonfederal lien to be choate, and therefore first in time, the "identity of the lienor, the property subject to the lien, and the *amount* of the lien [must be] established") (quoting *United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)); *see, e.g., United States v. Equitable Life Assurance Soc.,* 384 U.S. 323, 327–29, 86 S.Ct. 1561, 1563–65, 16 L.Ed.2d 593 (1966); *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 87–92, 83 S.Ct. 1651, 1654–57, 10 L.Ed.2d 770 (1963); *cf. Chevron U.S.A., Inc. v. May Oilfield Servs., Inc.,* 739 F.2d 498, 499 (10th Cir.1984). The district court agreed, granting FmHA priority over FLB's fees claim on the basis of our *T.H. Rogers* decision.

The history of the first-in-time/choateness rule is set forth in numerous cases and need not be recounted in full here. *See, e.g., Kimbell Foods,* 440 U.S. at 721 n. 8, 99 S.Ct. at 1454–55 n. 8. *Willow Creek Lumber Co. v. Porter County Plumbing & Heating, Inc.,* 572 F.2d 588, 590–91 (7th Cir. 1978); *Chicago Title Ins. Co. v. Sherred Village Assocs.,* 568 F.2d 217, 219–20 (1st Cir.1978), *vacated and remanded,* 441 U.S. 901, 99 S.Ct. 1987, 60 L.Ed.2d 370 (1979). We take up the story in the mid–1970's, prior to the Supreme Court's decision in *Kimbell Foods.* At that time, the circuits split into two general lines of authority on the issue whether this federal common law principle, rather than pertinent state law, provided the appropriate federal rule of decision with respect to the priority of consensual federal liens, just as it had earlier done with respect to federal tax liens. The First, Second, Fourth, and Seventh Circuits subscribed to the same approach this circuit followed in *T.H. Rogers,* while the Fifth and Ninth Circuits considered the first-in-time/choateness rule, then already substantially diminished in prominence by legislation in its inceptive area of federal tax collection, inapplicable to liens resulting from the government's voluntary extension of credit. *See Willow Creek Lumber,* 572 F.2d at 590–91; *Chicago Title Ins. Co.,* 568 F.2d at 220–21. In *Kimbell Foods,* the Supreme Court accepted review of two representative Fifth Circuit decisions and set about to resolve this conflict. *See generally Kimbell Foods,* 440 U.S. at 718–23, 723–25, and n. 16, 99 S.Ct. at 1453–56, –57, and n. 16.

Following an extensive discussion of the considerations pertinent to the choice between adopting state law as the federal rule of decision or employing a uniform nationwide principle such as the first-in-time/choateness rule, *see id.* at 727–40, 99 S.Ct. at 1457–65, the Court announced its holding that "absent a congressional directive, the relative priority of private liens and consensual liens arising from these Government [SBA and FmHA] lending programs is to be determined under nondiscriminatory state laws." *Id.* at 740, 99 S.Ct. at 1465. This rather broad pronouncement, which expressly excepts only discriminatory rules from the domain of appropriately adopted state lien priority law, evidences a general abandonment of the first-in-time/choateness rule outside the federal tax context. However, FmHA maintains that certain distinctions between *Kimbell Foods* and the case at bar, relating to the considerations underlying the former's ostensibly comprehensive holding, counsel against its application to the present circumstances.

FmHA contends that *Kimbell Foods* is inapposite because the instant lien dispute concerns real property to which the Uniform Commercial Code, a source of state law adopted in *Kimbell,* does not apply. While *Kimbell Foods* certainly encourages adoption of UCC provisions, *see Great Southwest Life Insurance Co. v. Frazier,* 860 F.2d 896, 899 (9th Cir.1988), *see also In re Murdock Machine & Engineering Co.,* 620 F.2d 767, 772–73 (10th Cir.1980), it does not indicate that other sources of state law are unacceptable. Indeed, one of the two Fifth Circuit cases reviewed in *Kimbell*

*Foods* was vacated and remanded precisely because the state's mechanic's lien statute, which establishes priorities that fall outside the scope of the UCC, *see* U.C.C. § 9–104(c) and § 9–310; *In re Waller Creek, Ltd.*, 867 F.2d 228, 233 (5th Cir.1989), had been passed over in favor of Model UCC provisions in the lower court's determination of the relative priorities of an FmHA security interest and a private repairman's lien. *United States v. Crittenden*, 563 F.2d 678, 683, 688–90 (5th Cir.1977), *vacated and remanded sub nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 723–25, 740, 99 S.Ct. 1448, 1455–57, 1465, *on remand*, 600 F.2d 478, 480 (5th Cir.1979); *see also Chicago Title Ins. Co. v. Sherred Village Assocs.*, 708 F.2d 804, 807, 810–11 (1st Cir. 1983) (also adopting state mechanic's lien law as federal rule of decision following remand by Supreme Court for reconsideration under *Kimbell Foods*). Courts have since relied upon *Kimbell Foods* for the adoption of local non-UCC law in various federal contexts. *See, e.g., Dupnik v. United States*, 848 F.2d 1476, 1478–79, 1481–84 (9th Cir.1988); *Pearlstein v. SBA*, 719 F.2d 1169, 1176–77 (D.C.Cir.1983); *United States v. S.K.A. Assocs., Inc.*, 600 F.2d 513, 515–16 (5th Cir.1979).

The emphasis placed by FmHA on its asserted need for uniformity in its loan transactions is simply not borne out by the pertinent authorities. The Supreme Court flatly dismissed this consideration in *Kimbell Foods:*

> Thus, the agencies' [SBA's and FmHA's] own operating practices belie their assertion that a federal rule of priority is needed to avoid the administrative burdens created by disparate state commercial rules. The programs already conform to each State's commercial standards. By using local lending offices and employees who are familiar with the law of their respective localities, the agencies function effectively without uniform procedures and legal rules.
>
> . . . .
>
> Since there is no indication that variant state priority schemes would burden current methods of loan processing, we conclude that considerations of administra-

tive convenience do not warrant adoption of a uniform federal law.

440 U.S. at 732, 733, 99 S.Ct. at 1460, 1461 (footnote omitted). Other decisions, rendered both before and after *Kimbell Foods*, have also expressly discounted the necessity for uniform treatment of FmHA loans. *See, e.g., United States v. Spears*, 859 F.2d 284, 290 (3d Cir.1988); *United States v. Tugwell*, 779 F.2d 5, 7 (4th Cir. 1985); *United States v. Chappell Livestock Auction, Inc.*, 523 F.2d 840, 841 (8th Cir.1975).

Finally, FmHA argues that whatever state statutory law may properly be employed as the federal rule of decision with respect to lien priorities, *Kimbell Foods* does not contemplate the adoption of state decisional law for such purposes. Again, however, the broad holding in *Kimbell Foods* contains no qualification in this respect, and FmHA has not cited a single authority imposing such a limitation. Indeed, a number of cases from various courts, including this circuit, illustrate the adoption of state common law principles as federal rules of decision under the *Kimbell Foods* analysis. *See, e.g., Sierra Club v. Hodel*, 848 F.2d 1068, 1079, 1081–84 and n. 12 (10th Cir.1988); *FDIC v. Palermo*, 815 F.2d 1329, 1334–35 (10th Cir.1987); *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1457–58, 1460–63 (9th Cir.1986); *Georgia Power Co. v. Sanders*, 617 F.2d 1112, 1115 n. 4, 1121 n. 13 (5th Cir.1980), *cert. denied*, 450 U.S. 936, 101 S.Ct. 1403, 67 L.Ed.2d 372 (1981); *cf. City of Evansville v. Kentucky Liquid Recycling, Inc.*, 604 F.2d 1008, 1021 n. 43 (7th Cir.1979) (in federal action for damages caused by discharge of contaminants into interstate waterway, "[a]lthough federal common law controls, federal statutes as well as *state statutes and common law* are nevertheless highly relevant"), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980).

Accordingly, we hold that *Kimbell Foods* requires adoption of the principles of Colorado lien priority law discussed earlier, which place FmHA in a junior position both as to FLB's mortgage lien and FLB's asso-

ciated fees claim. The contrary result reached by the district court in reliance upon our earlier decision in *T.H. Rogers* cannot stand.[1]

The judgment of the United States District Court for the District of Colorado is REVERSED and the causes REMANDED for further proceedings consistent with this opinion.

---

**1.** The entire court has reviewed and given its en banc approval to the present reassessment and divergent disposition of the common issues first addressed by another panel of this court in *T.H. Rogers.* *See generally United States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987).