STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2008 MAR 12 P 2: 48

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-07-40
REC-CUM- 3/12/2008

NORTHEAST CIVIL SOLUTIONS, INC.,
                              Plaintiff

v.                                          ORDER ON
                                            PLAINTIFF'S
                                            MOTION FOR
FIRST STEP LAND DEVELOPMENTS, INC.,         SUMMARY JUDGMENT
PAUL HOLLIS, and
FLASH ISLAND, INC.,

                              Defendants

DONALD L. GARBRECHT
LAW LIBRARY



Before the Court is Plaintiff Northeast Civil Solutions, Inc.'s Motion for

Summary Judgment on its claim to enforce a mechanic's lien against Defendant

Flash Island, Inc.

## BACKGROUND

In February 2006, Plaintiff Northeast Civil Solutions, Inc. ("NCS") entered

into a contract with Defendants First Step Land Development, Inc. ("First Step")

and Paul Hollis ("Hollis"), the President of First Step, to perform certain services,

including civil engineering and survey work, on a nine-lot development located

in Scarborough, Maine (the "Contract"). Pursuant to the Contract, NCS

furnished labor and materials from February 2006 through October 17, 2006.

NCS now alleges that it is owed approximately $75,000.00 plus applicable

interest for work done but not compensated. There is disagreement among the

parties as to the extent that NCS's work benefited all nine lots in the

development (NCS's position) or just some of the nine lots (Flash Island, Inc.'s

position).

First Step and its affiliate Cole Farm Barn, LLC ("Cole Farm") had been involved in various negotiations with Defendant Flash Island, Inc. ("Flash") prior to 2006. In or about Spring 2006, Hollis sought an additional advance of $400,000.00 from Flash on a loan previously given to Cole Farm. In connection with this advance, Flash agreed to take the assignment of a purchase and sale agreement that Hollis had for the development property in Scarborough. In Fall 2006, Hollis informed Flash that First Step could not repay the $400,000.00 advance. He proposed that Flash release its assignment of the purchase and sale agreement in exchange for a mortgage on Lot #1 of the property that had been the subject of the purchase and sale agreement. Flash agreed to this arrangement and on November 3, 2006, First Step granted a mortgage to Flash Island, Inc. secured by Lot #1 of the nine-lot development.

On December 6, 2006, NCS filed a Lien Certificate and Statement of Lien Claim in the Cumberland County Registry of Deeds. At this time, the only lot in the development that was owned by First Step was Lot #1 as the other eight lots in the development had been conveyed.[1] In February 2007, Flash foreclosed on its mortgage. Flash purchased Lot #1 at the foreclosure sale. Flash concedes that Lot # 1 would not exist if it had not been for the work of NCS.

In February 2007, NCS filed a Complaint with this Court against Defendants First Step, Hollis and Flash that contained several counts, including mechanic's lien, breach of contract, quantum meruit and unjust enrichment. NCS has not specified which counts are asserted against which Defendants. Defendants First Step and Hollis have not participated in this litigation and

---

[1] To date, neither NCS nor Flash has contended that any of the purchasers of the other eight lots in the development were not bona fide purchasers. Accordingly, this Court will assume that they are and, thus, are not subject to NCS's lien claim.

default judgment has been entered against each pursuant to this Court's February 29, 2008 Order. In January 2008, NCS filed the pending Motion for Summary Judgment against the Defendants, which it characterized as "an action to enforce a mechanic's lien." In their memoranda regarding this Motion, NCS and Flash discuss only the mechanic's lien claim. Accordingly, this Court addresses only that count in this Order.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

## DISCUSSION

Mechanics' liens are available to "[w]hoever performs labor or furnishes labor or materials...used in erecting, altering, moving or repairing a house,

3

building or appurtenances...by virtue of a contract with or by consent of the owner" in order "to secure payment thereof." 10 M.R.S.A. § 3251 (2007). For purposes of this statute, a mortgagee is considered an owner to the extent of its mortgage interest. *Carey v. Boulette*, 158 Me. 204, 206, 182 A.2d 473, 474 (1962); *Gagnon's Hardware & Furniture, Inc. v. Michaud*, 1998 ME 265, ¶ 6, 721 A.2d 193, 194.

In the instant case, NCS relies on *Saucier v. The Maine Supply and Garage Co.*, 109 Me. 342, 84 A. 461 (Me. 1912) to support its argument that its mechanic's lien is entitled to automatic priority over Flash because its contract with First Step was executed prior to Flash obtaining the mortgage on Lot #1. *Saucier* states in relevant part:

> Under principles well settled in this State and elsewhere, a mechanic's lien for labor and materials furnished under a contract takes precedence over a mortgage given subsequently to the making of the contract, though the labor and materials, or some of them, may not be actually furnished until after the mortgage is given.

*Saucier*, 109 Me. at 343, 84 A. at 461. This Court finds that *Saucier* is distinguishable from the instant case because it was expressly found by the Law Court that the mortgagee in *Saucier* "understood when they loaned the money and took the mortgage, that the plaintiff [the party seeking to assert the mechanic's lien] was then constructing the building under a contract." *Saucier*, 109 Me. at 345, 84 A. at 462. In the present case, NCS has not alleged, let alone shown, that Flash knew of the contract between First Step and itself (NCS instead relies on an overly-broad reading of *Saucier* to support its argument that its claim has automatic priority over Flash). As such, NCS cannot sustain its claim of priority solely on the basis of *Saucier*.

4

There is no question that Flash never contracted with NCS. Likewise, there is no allegation that NCS performed its work on the premises with the consent of Flash. In fact, it is undisputed that NCS finished its work on the premises in October 2006, prior to First Step giving Flash a mortgage in November 2006. Thus, Flash was not an owner for purposes of the mechanic's lien statute until after NCS had completed its work and could not have contracted with NCS or consented to NCS's work. The Court must now turn to the question of whether Flash qualifies as a bona fide purchaser ("BFP") such that it takes title to Lot #1 free of NCS's mechanic's lien. Title 10, section 3255(2) of the Maine Revised Statutes states in relevant part:

> Any person who is a bona fide purchaser for value of a house, building or appurtenances, a public building erected or owned by any city, town, county, school district or other municipal corporation, or a wharf or pier or any building thereon, including the ground adjacent to and upon which any such objects are constructed, takes title free of the lien described in this chapter unless, before the bona fide purchaser takes title to the premises on which such lien attaches:
>
> A.  The person performing or furnishing that labor, materials or services either has filed the notice required by section 3253 or has filed a notice in the office of the register of deeds in the county or registry district in which these premises are located setting forth a description of the property sufficiently accurate to identify it; the names of the owners; that the claimant is going to perform or furnish, is performing or furnishing or has performed or furnished labor, materials or services; and that the claimant may claim a lien therefor; and
>
> B.  If an action to enforce the lien has been commenced in accordance with this section, notice has been provided in accordance with section 3261.

While the statutes governing mechanic's liens do not define "bona fide purchaser," this Court looks to the well-established definition as set forth in Black's Law Dictionary and various Maine case law. A BFP is defined as "[o]ne

who buys something for value without notice of another's claim to the item or of any defects in the seller's title." Black's Law Dictionary 573 (2nd Pocket Edition 1996).

As there is no dispute that Flash paid value for Lot #1, the sole question before this Court is whether or not Flash took its mortgage with notice of NCS's unpaid work on the property. The Law Court has stated that "[n]otice does not mean knowledge – actual knowledge is not required." *Knapp v. Bailey*, 79 Me. 195, 202, 9 A. 122, 123 (1887). Thus, notice can be either express or implied. *Id.*; *Dumais v. Gagnon*, 433 A.2d 730, 736 (Me. 1981). The Law Court has stated:

> Actual knowledge of an adverse claim of ownership is not the only form of notice that will deny a purchaser the protected status of bona fide purchaser for value without notice. One who has "knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries" is chargeable with notice of "the facts by which ordinary diligence he would have ascertained."

*Gagner v. Kittery Water Dist., Me.*, 385 A.2d 206, 207 (Me. 1978) (quoting *Knapp*, 79 Me. at 204, 9 A. at 124). Notice is imputed when a party "chooses to remain voluntarily ignorant of the fact, or is grossly negligent in not following up the inquiry which the known facts suggest." *Knapp*, 79 Me. at 202, 9 A. at 123.[2]

The Law Court has acknowledged that there is no bright-line rule for determining "what would be a sufficiency of facts to excite inquiry;" rather, "each case depends on its own facts." *Knapp*, 79 Me. at 204, 9 A. at 124. The facts as presented to this Court do not permit a decision on the issue of notice at this point; indeed, there remains a genuine issue of material fact as to whether Flash had notice, either express or implied, of NCS's npaid work on the property. It is

---

[2] The *Knapp* court further differentiated between implied and constructive notice, stating that the former "arises from inference of fact" while the latter rests "upon strictly legal inference." *Knapp*, 79 Me. at 203, 9 A. at 123.

6

undisputed that Flash did not contract with NCS, but Flash did receive the assignment of the purchase and sale agreement for the premises in Scarborough and Flash admitted at oral argument that its Lot #1 would not exist but for the work of NCS in developing the nine lots of the premises. Moreover, Flash has some history with First Step, Hollis and Cole Farm and was aware of their financial difficulties throughout 2006 (indeed, this is why Flash took a mortgage interest in Lot #1 in the first place). Thus, Flash may have had a duty to inquire further about the work done on Lot #1 based on the facts that it did know when it took a mortgage interest in Lot #1. The Court offers no opinion as to the merit or strength of any of these arguments except to say that they are properly within the province of the trier of fact to consider and weigh in determining whether or not Flash had notice of NCS's unpaid work.

In the event that Flash is found not to qualify as a BFP at trial, the Court turns to the question of the amount of the lien NCS can impose on Flash's Lot #1. It is undisputed that the Contract calls for NCS to provide services to what was the entire nine-lot development; in other words, there was no lot-by-lot breakdown of the work to be done. It is further undisputed that by the time NCS filed its Lien Claim against First Step in December 2006, eight of the nine lots had been conveyed to unquestionable BFPs and First Step owned only Lot #1, the lot subject to the mortgage held by Flash. NCS and Flash disagree as to the value of NCS's lien against Lot #1. Flash argues that it should be responsible only for that portion of NCS's work allocated to Lot #1. NCS disagrees and argues that it can assert the entirety of its lien claim against Lot #1. The Court agrees with NCS.

At the time NCS asserted its lien claim against First Step, it did so against as much of the original nine-lot development as it could (namely, Lot #1 because

7

the other eight lots had been previously sold to BFPs). First Step has not participated in this litigation and thus has raised no objection to NCS's claim that it was originally owed about $75,000.00 for work done on the entire nine-lot development, but Flash does not dispute this figure except to state that it does not represent the value conferred upon its Lot #1 alone.

Flash's qualification is a distinction without a difference. NCS was entitled to assert the entirety of its lien claim against all of the property comprising the nine-lot development; however, by the time such lien claim was asserted, eight of the nine lots had been conveyed to BFPs thus leaving only Lot #1 as the property against which NCS's lien could be imposed. There is no dispute that at the time NCS performed its contract, the premises were owned by a single owner and only later subdivided. For this reason, the instant case is distinguishable from *Curtis Walter Stewart Architects v. Cohen*, PORSC-RE-06-056 (Me. Super. Ct., Cum. Cty., Jan. 30, 2008) (Crowley, J.), in which this Court held that severally owned lots comprising one development project are not automatically subject to a blanket lien for labor and materials provided to all lots constituting the development.

Thus, there is only one determination that remains to be made in this case: whether or not Flash is a BFP. If the trier of fact finds Flash to be a BFP, Flash takes Lot #1 free of NCS's mechanic's lien claim pursuant to 10 M.R.S.A. § 3255(2). If the trier of fact does not find Flash to be a BFP, NCS can assert the entirety of its mechanic's lien claim against Flash.

Therefore, the entry is:

> Plaintiff Northeast Civil Solution, Inc.'s Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

8

Plaintiff's Motion is denied in so far as there is a genuine issue of material fact to be resolved at trial regarding whether or not Defendant Flash Island, Inc. is a bona fide purchaser. If Defendant Flash Island, Inc. is deemed not to be a bona fide purchaser, Plaintiff's Motion is granted with respect to the value of the mechanic's lien imposed on Flash Island, Inc.'s property.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___12th___ day of ___March___, 2008.

Robert E. Crowley
Justice, Superior Court

THEODORE IRWIN JR ESQ
IRWIN TARDY & MORRIS
52 CENTER ST
PORTLAND ME 04101

RICHARD OLSON ESQ
PERKINS OLSON
PO BOX 449
PORTLAND ME 04112-0449